The Jarie Corporation, a Delaware corporation in dissolution v. Commissioner.
Jarie Corp. v. Commissioner
Docket No. 92345.
United States Tax Court
T.C. Memo 1963-152; 1963 Tax Ct. Memo LEXIS 193; 22 T.C.M. (CCH) 726; T.C.M. (RIA) 63152; May 31, 1963
William E. Bardusch, Jr., for petitioner. Philip Shurman and Robert D. Whoriskey, for the respondent. MURDOCK Memorandum Opinion MURDOCK, Judge: The Commissioner determined a deficiency of $27,293.15 in income tax of the petitioner for 1958. The only issue for decision is whether the petitioner is exempt from tax under section 501(c)(3), Internal Revenue Code *194 of 1954. The return was filed with the district director of internal revenue for the Lower Manhattan District of New York. The parties have filed a stipulation of facts which is adopted as the findings of fact. There is no other evidence in the record in this case. The petitioner was incorporated in 1929 under the laws of Delaware by Joseph R. Esposito, who transferred securities to it in exchange for all of its stock, which he then held until his death on August 5, 1957. All net earnings distributed by it were paid or payable to Joseph and it was properly regarded as his personal holding company for tax purposes during that period. The certificate of incorporation contains no reference to charities. A certificate of dissolution of the petitioner was filed on March 9, 1959. The returns of the petitioner were on a cash basis. An income tax return and a personal holding company return for the petitioner were filed for the calendar years 1957 and 1958. E. B. Hallett, James Beckett and Russell Gowans were the executors of Joseph's estate and were also the only directors of the petitioner after Joseph's death. The executors filed a petition to probate Joseph's will on August 9, 1957 to *195 which a brother filed objections on September 12, 1957. A trial was held on November 6, 1958 at which the contestant offered no proof and the will was admitted to probate on December 17, 1958. The will provided for the payment of debts and funeral expenses, for the payment of all inheritance and estate taxes out of the residuary estate, for the distribution of some personal belongings to individuals and an athletic club, for two specific bequests of $10,000 each to Catholic churches for masses, for 21 specific bequests totaling $455,000 to named individuals, and to nine tax free charities a total of $135,000 in specific bequests plus the residue of his estate. Paragraph "EIGHTEENTH" of the will was as follows: EIGHTEENTH: In the event that the assets of my estate remaining after payment of debts, taxes and expenses of administration shall be insufficient to pay in full all monetary legacies herein provided, it is my wish and direction that the bequests to individuals hereinabove named shall be preferred as to payment to the bequests for charitable purposes and shall not abate. Paragraph "TWENTY-FIRST" was as follows: TWENTY-FIRST: As I realize the settlement of my estate will *196 be delayed because of the requirements of Income, Estate and Inheritance Tax Laws, I expressly provide that no monetary bequests made in this Will shall bear interest until the Federal Tax liability of my estate shall have been finally determined and have been fully paid, with interest, if any. The income tax returns of the petitioner showed, inter alia, the following. Taxable In-
End
come before
Dividends
Total
of Year
Gross
Regular
Special
Received
Distribu-
Earned
Year
Income
Deductions
Deductions
Deduction
butions
Surplus
1957
$ 44,687.79
$4,911.13
$ 39,776.66
$31,033.21
0
$92,058.90
1958
140,382.79
5,008.25
135,374.54
27,523.70
$105,000
81,512.81 These returns showed for each year "Paidin or capital surplus $35,996.55" and for the beginning and end of 1958 "Surplus reserves $317,474.83" which exceeded the same item on the 1957 return by $34,085.44, the amount of a consent dividend added to surplus. See sec. 565(c)(2). The petitioner made some changes in its investments between August 5, 1957 and the end of 1958. The value of its assets at August 5, 1957 was $1,031,206.71 and at March 10, 1959 was *197 $860,406.01. The original income tax return of the estate for 1957 reported a consent dividend of $34,085.44 from the petitioner (see section 565), total income of $34,335.44 and no charitable deduction or distributions to beneficiaries. An amended return for 1957 was filed on April 21, 1959 claiming a charitable deduction of $34,277.20 and no taxable income. The income tax return of the estate for 1958 reported dividends of $105,000 from the petitioner, total income of $106,616.27, a charitable deduction of $105,736.52 and no taxable income. Those returns do not show that any amount was distributed or distributable to any particular charitable organization. There is no showing of the date or amount of any distribution by the estate or of any accounting of the executors. The petitioner starts off with the burden of proof. It concedes that it was a personal holding company while Joseph lived but contends that its status changed at his death on August 5, 1957, at which time his estate became the owner of all of its stock. Its organization, it argues, then consisted, under New York law, of its certificate of incorporation and Joseph's will, and thus it became a corporation "organized *198 for charitable purposes, i.e., to pass along its income and earnings to the charitable residuary legatees." It cites and relies upon John Danz Charitable Trust, 32 T.C. 469, affirmed, 284 F. 2d 726. It says "It is plain from the record that Jarie's 'operation' from the date of testator's death was simply to hold, invest and reinvest securities and cash and pay over the net income realized to its sole stockholder, the Estate." Actually, the day to day operations of Jarie did not change in any material way up to the close of 1958. It continued its investment policy, added its 1957 earnings to its surplus, distributed some of its current earnings to Joseph's estate in 1958 and retained some of its earnings. The stipulation shows that the value of its assets was $1,031,206.71 on August 5, 1957, and $860,406.01 on March 10, 1959 when it liquidated. The operations of Jarie from January 1, 1957 to August 5, 1957, all of the earnings of which were reported in its 1957 return, were admittedly those of Joseph's personal holding company. His will provided for the payment of his personal debts, funeral expenses, taxes, interest thereon, and the expenses of administration *199 of his estate. He mentioned therein the possibility that his assets might then not be sufficient "to pay in full all monetary legacies" and in that case the bequests to individuals were preferred over those for charitable purposes. There was a will contest. Expenditures connected with the above were not charitable purposes for the use of earnings of Jarie. Joseph's will provided for specific cash bequests of $610,000. The record in this case does not show how the estate was settled or what it did with any earnings of Jarie. The limited amount of facts which can be gleaned from the stipulation does not justify a conclusion that the petitioner was organized and operated during 1958, exclusively for religious, charitable or educational purposes or that no part of its earnings inured to the benefit of any private shareholder or individual within the meaning of section 501(c)(3) of the Internal Revenue Code of 1954, or that John Danz Charitable Trust, supra, has any application. Decision will be entered for the respondent.